1834.73. Morning. Good morning. My name is Thomas Ricotta. I represent the appellant, Rene Camoya. We're appealing the district court's decision on summary judgment, whereby the judge modified the report and recommendation of the magistrate judge and granted summary judgment against our client. The district judge specifically modified and found summary judgment on the limited determination that our client had not established that the defendant perceived her to suffer from bipolar disorder. Isn't that what's in the complaint? It is in the complaint that there was a... It's in the allegation. ...that they perceived her as suffering from bipolar disorder because that, at that time, was what was reported. However, the complaint does more generally state that she was discriminated against due to a perceived disability. So our argument, as we flush out in our brief, is that in one way that the lower court erred is by limiting the analysis purely to bipolar disorder and whether they perceived her as having suffering from bipolar disorder as opposed to some other mental health disability. However, I will address... Now, that would mean that the complaint doesn't have to specify what the disability that somebody else perceived your client to have. Well, in a case such as this one, it would create a... to require that degree of specificity would put an undue burden on a plaintiff to know... Know it in the minds of other people and see what they perceive. Exactly, before you go through a discovery. But she pled it. What she pled was what she was aware of, which was that there was a report made alleging that she suffered from bipolar disorder, and that triggered the events that led to her termination. So when she pled... How can a defendant defend if you just read any reference to a mental condition as covering all potential disabilities of a mental variety? Well, I think they can defend it because through the course of discovery, their witnesses and the documentation then flushed out some of the findings by their doctors, which were that they perceived her to suffer from panic attacks and anxiety, which, again, and I would definitely want to take some of this time to address the bipolar disorder because I think that even if we limit the analysis to bipolar disorder, the lower court erred and should have found that she was perceived as suffering from bipolar disorder. But I think just finishing that... I think it would be good if you did that since that was what the allegation... Okay. ...the only specific allegation was. Certainly. So with respect to the bipolar disorder, as the Court is well aware, for us to establish that she was perceived disabled, we would have to establish a disability and that that disability qualifies as a disability under the ADA. In this case, it's the pre-2009 amendments to the ADA. Here, in reviewing the record, what you have is you have the doctor who evaluated her. He explicitly states that my job is not to diagnose, which is not what the law requires either. They don't have to diagnose her. They just have to perceive her as suffering from this disability. And then, in addition, as the Court is aware, when analyzing summary judgment, we have to view the facts in a light most favorable to the plaintiff. So in reviewing the record, and I'll refer the Court specifically to the appendix, page 413, which is the Dr. Dr. Marshall's deposition testimony, he references and is questioned and answers as to the symptoms of bipolar disorder. What does someone evidence when they suffer from bipolar disorder? And he says two things, basically. He says they evidence hypomanic behavior, and he goes on to state that it impacts their ability to sleep. That's very important and relevant, and it was, frankly, overlooked by the lower court because, number one, that is the symptom that he looks at when he looks for somebody who potentially suffers from bipolar disorder and he perceives someone to potentially suffer from bipolar disorder. But, number two, he references the major life activity, sleeping, that would be impacted by that disability. So then when you go to the appendix, pages 603 through 605, which is his actual memo where he determines her unfit, he uses as a basis for that determination of unfit, number one, he references the allegation that she suffers from bipolar disorder, which in and of itself should create a question of fact as to whether she was actually perceived as bipolar. But even more importantly he references it, but doesn't say it is thought that she has it. He does not diagnose her. And at his deposition he says, my job is not to diagnose anyone. But, again, we're talking about perception. Did he perceive her to suffer from bipolar disorder? Is there a question of fact, viewing the facts in the light most favorable to the plaintiff, that he perceived her to suffer from bipolar disorder? And where it is more relevant is in that document, I believe it is point nine, where he talks about when she presented before him, she presented with hypomanic behavior. Which, again, is the only symptom he described as what someone with bipolar disorder would display. So in viewing that, again, and I hate to beat a dead horse, but in a light most favorable to the plaintiff, as the district court should have done, there is absolutely a factual question. Knowing that this doctor would never say she suffers from bipolar disorder because he doesn't diagnose her, there's absolutely a factual question as to whether he perceived that allegation of bipolar disorder to be factually accurate based on her presenting the same exact symptoms that he says people with bipolar disorder evidence. In your brief, I read your brief on page 20 and 21 to kind of accept the assertion by the city that they did not, in fact, perceive her to suffer from bipolar disorder. You say it's respectfully submitted that finding that there was not a record upon which a reasonable fact finder could so find. There was an error still to limit the assessment to this particular disability, as there was evidence that they perceived her to suffer from anxiety and panic attacks. So aren't you essentially saying, agreeing with the district court, that there was no basis? No. What we're saying there, or what we're trying to say, and maybe inartfully, is that while we believed it to be an error for the lower court to find that she was not perceived to suffer from bipolar disorder, which was the sole basis for the granting of summary judgment at this point, the court did not go into the next steps of the analysis. We believed it to be an error that they found her to not — they perceived her to not be — suffer from bipolar disorder. However, our argument here was that should not have been the end of the analysis. The court should have looked at the record and then looked at it and said, well, even if we don't believe she suffered bipolar disorder, do we believe she suffered from some other mental health disability that the record flushed out through discovery that that guided and formed the basis for the decision in an unlawful manner? So that's the argument we were trying to make. And in our opposition to summary judgment, we did concede, because it was — it's factual, that Dr. Marshall did not diagnose her with bipolar disorder. But again, that is borderline irrelevant because to require a plaintiff — to require a plaintiff alleging a perceived disability claim to have the defendant, in this case the police department, diagnose them would literally eliminate any ability to bring this type of claim because they don't diagnose. I didn't understand the district court's decision to turn on a diagnosis. It was whether there was a perception of bipolar disorder. And I didn't see — I mean, could you point to any fact, what record evidence that suggests that they perceived her as suffering from bipolar and took the action of dismissing her on that basis? Sure. Well, the document that I referenced before, it's in the appendix 603 through 605, which is Dr. Marshall's report determining her to be unfit. I think that in conjunction with — Does it ever mention bipolar? It mentions it — and that's why I referenced it before. It mentions earlier on the allegations that they received that she suffered from bipolar disorder. But that, of course, doesn't establish that they saw hers in that way. But reading that document as a whole, in conjunction with his testimony, in a light The question on summary judgment is, does that create a factual question? Okay. Did Dr. Marshall perceive that she suffered hypomanic behavior? Hypomanic behavior is synonymous with bipolar disorder. And so I find some validity in that — in that — in that allegation. Okay. I think we have the argument. You have two minutes of rebuttal, and we'll hear from your adversary. Thank you. Good morning. May it please the Court. You can — you can raise the — there's a button to your right, your lower right, that will raise the podium. That will make you more comfortable. Perfect. Thank you. Okay. Thank you. Good morning. My name is Anna Gottlieb, and I represent the city. This Court should affirm summary judgment for appellees for three reasons. First, the record here is clear that the NYPD at no point perceived the plaintiff to suffer from bipolar disorder. And that is the only disability which plaintiff pleaded. Second, the NYPD did not perceive plaintiff to have any other disability within the meaning of the ADA. And third, plaintiff cannot prove that she was otherwise qualified to perform the functions of a police officer, which requires the dismissal of all the remaining claims. On the first point, the pleading issue, plaintiff here had an opportunity. There are four versions of her complaint. I'm going to interrupt for just one second. So in your findings about whether she was qualified or not, you don't point to her disingenuousness in failing to disclose her prior diagnoses and medication for anxiety. It actually is part of the conclusion reached by the NYPD. Dr. Marshall's memorandum notes that in addition to her long history of prior anxiety and panic attacks, she was actually her lack of candor during this process is part of the reason that she was found to be unfit to serve. And the ADA is clear that the employer is who we look to when we look to see what are the essential functions of being a police officer. And here it's outlined in our brief. But the essential functions of being a police officer are activities that require to be for a person to be in a high stress situation, such as intervening in ongoing crimes, having a firearm, testifying in court to which that candor issue is very relevant to. Backtracking to the first point. So there are four versions of the complaint here. And in the third motion to amend the complaint, plaintiff submitted an affidavit in which she herself affirms that the perceived that what she perceived I'm sorry, what the NYPD perceived her to have is bipolar disorder. And now my adversary noted that we can't read the minds of someone else. But here there was an investigation and she was a party to that investigation. And she was asked questions about her anxiety, about her history of medications for that condition. So it's certainly it's not clear why this wasn't pled. The only claim she really pled was that the NYPD perceived her to have bipolar disorder. She was also asked this question at her deposition on page 216 of the appendix. And she also noted that this is the main allegation she is for what she is seeking damages. Your adversary points to the report by Dr. Marshall on A603 to 605 that reports the phone call mentioning I guess bipolar disorder and then referring to her as hypomanic during the course of interviews. Why isn't that enough to support a finding that there was a perception that she was bipolar? I think it's a big leap to ask to say that hypomanic behavior is necessarily a perception of bipolar disorder. And here I think the district court observed very aptly that the anonymous call in which there was an allegation that plaintiff was bipolar is really what set off a chain of events that led to an investigation that disclosed other issues. But there really is no evidence, including that report. That report does not show any suggestion that anyone at the NYPD perceived her to have bipolar disorder. And regardless of how she styles her disability, what the ADA before the 2009 amendments required is that the disability be one that substantially limits a major life activity. Now in their brief and in the papers below, the only major life activity on which plaintiff relied was working. A few moments ago my adversary referenced sleep, which just hasn't been raised until this point. But again, regardless of how it is styled, the NYPD determination here is only limited to the fact that she cannot hold the position of a police officer with the NYPD. There is absolutely no evidence that the NYPD perceived her as being unable to work in other jobs, or to sleep for that matter. And the third point, which is that she was otherwise qualified to be a police officer, there is no evidence. She submits no evidence that she was qualified to perform these essential functions. Now the NYPD has evidence from two psychologists on their staff that show that they did not find her to be fit. Plaintiff does not counter this with any kind of competent medical evidence, nor does she dispute the underlying facts that were the basis of the conclusions by these psychologists. For instance, Dr. Marshall found that she suffered from panic attacks from 2002 to 2006. Plaintiff does not dispute that allegation. At her deposition, she merely said that she suffered panic attacks while she was taking a different medication called Ephedra. She does not submit any kind of evidence that shows a link. Did the district judge dismiss this on the ground that she was not qualified? No, Your Honor. The district court did not feel the need to reach that conclusion. I understand that. So we would have to remand for a finding on that. Well, Your Honor. If you are correct with respect to everything else. Your Honor, we are simply providing an alternate ground for affirmance here. But really, yes, the district court did find that the plaintiff was not disabled. She was not perceived to be disabled by the NYPD in any way. Your argument is that whether she was perceived as disabled within the meaning of the ADA is not really the issue. The question is whether she was in fact qualified to be a police officer. No, Your Honor. Our first and primary argument is that there is absolutely no perception by the NYPD that she was disabled within the meaning of the ADA or in any way. And the alternate argument is that she was not otherwise. She cannot prove that she was otherwise qualified. Thank you. And if there are no other questions, we rest on our briefs. Thank you very much. Thank you. And we ask for an affirmance. Thank you. Mr. Riccotti, you have two minutes of rebuttal. Thank you, Your Honor. So just a couple of things that I would follow up on. As it relates to the major life activity, Dr. Marshall, in Appendix 414, states that bipolar disorder impacts an ability to sleep. So while, yes, in analyzing the argument that we made as it relates to anxiety and panic attacks being qualified and that they should have been considered, we focused our argument on the argument that working is a major life activity. Nonetheless, so as is sleeping, which Dr. Marshall conceded, is a major life activity that is impacted by bipolar disorder. But why would anybody think she can't work? The issue is whether she can function as a police officer. Well, for the purposes of determining whether it is a disability that's qualified under the ADA, it has to impact a major life activity. That major life activity can be working, it can also be sleeping, as this Court held in Golwell v. Suffolk County Police Department 158 F3D 635. So in order for us to establish the disability, we have to not only establish that they perceived her to suffer from something, but then establish that that impacted a major life activity such that it was covered by the ADA, which I think there's no question bipolar disorder does based on that law and the evidence. So it just then becomes a matter of did they perceive it. I won't rehash my argument, but I think the evidence in the record does create a factual issue, in that when Dr. Marshall submitted his report, he cited to the symptoms of bipolar disorder in reference, while also... He mentioned, he said that she displayed some hypomania. Yes. So what he says is... In one interview. .9, she appeared irritated and hypomanic. In one interview. Her overall presentation was a concern. He doesn't necessarily parse out whether it was one interview or multiple interviews, but he says her overall presentation was a concern. She appeared irritated and hypomanic. That's on 605.9. So at the end of the day, I think what Your Honor had said is accurate, that the otherwise qualified portion of this, which would go into whether she is qualified, whether she presents a direct risk, is — it was brief for the sake of completeness, but it's not necessarily something that I think this Court gets into, because the lower court only analyzed whether she was perceived to be disabled. And the magistrate judge, you know, did not go into their other objections to the magistrate judge's findings on the other elements of the claim. Thank you, Mr. Ricciardo. Thank you very much. A well-reserved decision.